# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 2:12-cv-00073-MR-DLH

SUSAN COURTNEY, )
)
    Plaintiff, )
) **MEMORANDUM OF**
    vs. ) **DECISION AND ORDER**
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
)
    Defendant. )
_____ )

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 12].

## I.   PROCEDURAL HISTORY

The Plaintiff Susan Courtney filed an application for a period of Title XVI supplemental security income on July 12, 2010, alleging that she had become disabled as of January 8, 2007. [Transcript ("T.") 196].[1] The Plaintiff's application was denied initially on December 13, 2010, [T. 165-173], and was denied again upon reconsideration on May 13, 2011 [T. 177-

---

[1] The Plaintiff had previously applied for benefits and had received an unfavorable ALJ decision regarding her case, dated June 18, 2010. [T. 92-118].

185]. Upon the Plaintiff's request for a rehearing, a hearing was held before an Administrative Law Judge ("ALJ") via video hearing on September 30, 2011. [T. 40-70]. On January 24, 2012, the ALJ issued an unfavorable decision. [T. 19-35]. On July 18, 2012, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-3]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing]

more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no

severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education, or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity ("RFC") and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.

## IV.  THE ALJ'S DECISION

On January 24, 2012, the ALJ issued a decision denying the Plaintiff's claims. [T. 19-35].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since July 12, 2010. [T. 24].  The ALJ then found that the medical evidence established the following severe impairments: degenerative disc disease, narcolepsy, hepatitis C, cirrhosis, depression, anxiety, bipolar disorder, attention deficit hyperactivity disorder, and diabetes mellitus with

intermittent neuropathy. [Id.]. The ALJ determined that none of the Plaintiff's impairments met or equaled a listing. [T. 27].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to perform light work as defined in 20 C.F.R. § 416.967(b). [T. 28-29]. Particularly, the ALJ noted:

> I find she can lift or carry up to 20 pounds occasionally and 10 pounds frequently. In addition, I find she can sit, stand, or walk for six hours each out of an eight-hour workday. She is able to climb frequently and she has no problems balancing, stooping, kneeling, crouching, and crawling. However, she must avoid concentrated exposure to hazards. Additionally, I find she can concentrate, persist and work at pace to do simple, routine, and repetitive tasks at level three commonsense reasoning per the Dictionary of Occupational Titles for two-hour periods at a time in an eight hour day and 40 hour week. She is capable of interacting with the public occasionally and she can interact appropriately with coworkers and supervisors, in this type of non-production pace and low social demand setting.

[T. 29]. The ALJ found that the Plaintiff was unable to perform any past relevant work. [T. 33]. Further, the ALJ noted that the transferability of job skills was not material to the determination of the Plaintiff's disability because the Medical-Vocational Rules framework supported a finding of "not disabled." [Id.]. Finally, the ALJ concluded that there are jobs that

5

exist in significant numbers in the national economy that the Plaintiff could perform. [T. 34].

## V. DISCUSSION[2]

The Plaintiff asserts the following assignments of error: (1) the ALJ failed to follow the clear instruction of the Secretary's own regulations, in evaluating the RFC of the Plaintiff; (2) the ALJ failed to evaluate the weight of the opinions of the treating medical sources, and he did not fulfill his duty to explain why the opinions of treating medical sources were ignored; and (3) the ALJ failed to evaluate the medical opinion evidence, as he did not acknowledge in his opinion the global assessment of function ("GAF") scores in the evidence, which scores, the Plaintiff contends, support a finding consistent with marked limitations in multiple domains. [Doc. 11 at 7].

### A. Residual Functional Capacity Determination

The Plaintiff notes that the ALJ found the Plaintiff to be capable of performing light jobs with a reasoning level of *two* as that term is defined in the <u>Dictionary of Occupational Titles</u> [T. 34], but he concluded in his RFC evaluation that she could only perform jobs with a reasoning level of *three* [T. 28-29]. The Plaintiff claims that the reasoning requirements of the jobs

---
[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

6

that the ALJ referenced in his decision are inconsistent with the Plaintiff's RFC. [Doc. 11 at 9-10]. Particularly, the Plaintiff notes Dr. Nancy Lloyd's opinion and Dr. E. Woods's finding that the Plaintiff would be "moderately limited" in her ability to understand and remember detailed instructions. [T. 135, 153].

The jobs that the ALJ referenced in his decision require a reasoning development level of two [T. 34], which is *less* complex than the reasoning development level three that he found the Plaintiff to be capable of attaining [T. 28-29]. Therefore, the ALJ's inconsistency regarding the Plaintiff's reasoning development level constitutes harmless error. Level three reasoning development is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations," whereas level two reasoning development only requires the ability to "[a]pply commonsense understanding to carry out detailed but involved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles (DOT), App'x C.[3] The ALJ's listing of potential jobs that the Plaintiff could do work at level

---

[3] Available at http://www.occupationalinfo.org/appendxc_1.html#II (last visited May 5,

two reasoning development in fact benefitted the Plaintiff in this case. A job with a level two reasoning development would better serve the Plaintiff since she is limited to "simple, routine, and repetitive tasks." [T. 29]; see Mullis v. Colvin, No. 1:11CV22, 2014 WL 575722, at *11 (M.D.N.C. Feb. 11, 2014) (quoting Tudino v. Barnhart, No. 06-CV-2487-BEN (JMA), 2008 WL 4161443, at * 11 (S.D. Cal. Sept. 5, 2008)) (noting that level two reasoning is "the breaking point for those individuals limited to performing only simple repetitive tasks").

In making his RFC determination, the ALJ considered the Plaintiff's case record as well as the Plaintiff's testimony, and particularly noted his placing great weight on Dr. Nancy Lloyd's opinion and Dr. E. Woods's findings as "consistent with the claimant's mental health treatment notes and the claimant's own statements in the record regarding her abilities." [T. 32]. Notably, there is a distinction between the ability to "understand and remember detailed instructions" [T. 135, 153] and the level two reasoning development ability to carry out detailed *but uninvolved* instructions as specified in Appendix C of the DOT. See Pippen v. Astrue, No. 1:09-CV-308, 2010 WL 3656002, at *7 (W.D.N.C. Aug. 24, 2010) (concluding that reasoning level of two is not inconsistent with a simple work limitation and

---

2014). A copy of this website page as it appeared on the date last visited is attached to this Order as Exhibit 1.

noting that reasoning level two "specifically caveats that the [detailed] instructions would be uninvolved—that is, not a high level of reasoning") (quoting Flaherty v. Halter, 182 F. Supp. 2d 824, 850 (D. Minn. 2001)). The Plaintiff's first assignment of error regarding the RFC assessment is without merit.

The Plaintiff further contends that the ALJ did not provide a function by function assessment or an assessment of the Plaintiff's ability to perform sustained work, in accordance with SSR 96-8p. [Doc. 11 at 10]. SSR 96-8p indicates that in making the RFC assessment, the ALJ first must identify and then assess the claimant's functional limitations due to physical abilities, mental abilities, and other abilities affected by the claimant's impairments. SSR 96-8p at ¶ 4; 20 C.F.R. § 404.1545. After these functional limitations have been discussed, the ALJ then must determine the claimant's RFC. SSR 96-8p at ¶ 4.

In this case, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [T. 29]. The ALJ specifically outlined the Plaintiff's physical and mental severe impairments with detailed discussion of the medical evidence supporting findings of such symptoms. [T. 30-33]. With regard to the Plaintiff's physical abilities,

the ALJ noted Dr. Burgess's findings on November 24, 2010 that the Plaintiff could "stand, sit, walk, climb stairs, squat, bend, twist, carry, lift, push or pull" with limitation on her lifting, and that she could "write and pick up coins with either hand without difficulty." [T. 30, 384-85]. Further, the ALJ referenced Dr. Burgess's findings on April 25, 2011 that the Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing and pulling heavy objects, as well as the ability to hear or speak, appeared to be only mildly impaired." [T. 31, 387]. The ALJ recognized the previous ALJ's restrictions on the Plaintiff for "never climbing ladders, ropes, and scaffolds" due to her narcolepsy [T. 31, 112], but noted the absence of any "drop attacks" in the record and thus limited the Plaintiff to "no more than frequent climbing of ramps, stairs, ladders, ropes, and scaffolds." [T. 31]. Additionally, the ALJ pointed out the Plaintiff's statements to medical providers that "she enjoys doing activities such as baking, riding four-wheelers, and doing the laundry," activities which are inconsistent with her hearing testimony regarding such matters. [T. 31, 422].[4]

---

[4] Particularly, the ALJ noted:

> The record in this case establishes that the claimant's contentions regarding her symptoms and limitations are not wholly credible. There are inconsistencies between the

10

With regard to the Plaintiff's mental abilities, the ALJ accounted for such impairments "by limiting her to the performance of simple, routine, and repetitive tasks" at a "non-production pace and low social demand setting." [T. 32]. To make such findings, the ALJ considered the record, particularly referencing the Plaintiff's admission to activities indicating that she could concentrate, the Plaintiff's report in May 2011 that "she was independent in all of her activities of daily living, including remembering to take her medications" [T. 32, 411], her reports that "she was reading library books and that she enjoyed doing so" [T. 32, 325, 343, 350, 352, 356], and her treatment notes indicating normal limits of thought content and focused

---

claimant's statements and the other evidence that detracts from the credibility of her assertions. At the hearing, the claimant testified that she does not read because she has problems concentrating. She further reported that she does not go to the public library. However, my review of the evidence of record shows that the claimant reported to one of her counselors that she enjoyed reading library books. Furthermore, her counselor went with her to the public library on numerous therapeutic outings in 2009 and 2010. (Exhibit B2F, pgs. 13, 31, 38, 40, 44). Similarly, at the hearing the claimant mentioned that her daughter lives in South Carolina. I asked her if she has taken any trips to see her daughter and she testified that she has not. However, the record shows that she traveled to her daughter's house in March of 2010. (Exhibit B2F, pg. 4). Likewise, July 2011 records from Appalachian Community Services shows the claimant reported enjoying activities such as baking and riding on four wheelers. (Exhibit B12F, pg. 5). However, I specifically asked her whether she bakes and rides four wheelers at the hearing and she testified that she does not.

[T. 30].

11

attention/concentration [T. 32, 418-30]. [T. 32]. Accordingly, the Plaintiff's second assignment of error is without merit.

Finally, the Plaintiff argues that the ALJ's RFC finding is inconsistent with the opinion evidence of Dr. Jim Miller, Ms. Jerelene Howell, and Dr. Jennifer Zeisz. [Doc. 11 at 4-5]. The Plaintiff cites Metcalf v. Astrue, No. 1:08-cv-474, 2010 U.S. Dist. LEXIS 141791 (W.D.N.C. 2010) "regarding the methodology of case analysis by the ALJ," but provides no specific legal arguments to support her proposition regarding the inconsistencies she claims. [Doc. 11 at 11]. The Court finds no error in the ALJ's evaluation of this opinion evidence.

The ALJ noted the findings of Drs. Miller, Howell, and Zeisz in his decision. [T. 25-28]. He gave little weight to Dr. Miller's findings since "[h]e only examined the claimant once and his findings are inconsistent with treatment notes and the claimant's own statements that show that she was able to go shopping and check out books from the library." [T. 32-33]. He gave limited weight to Dr. Zeisz's and Ms. Howell's opinion, noting that the Plaintiff "would have more than mild challenges in" remembering information and following directions in an employment setting and that "because I have limited the claimant to the performance of simple, routine and repetitive tasks in a non-production based environment with low social

demands, the chances of her experiencing frustrations are lessened and . . . she should be able to interact appropriately with co-workers and supervisors." [Id.].[5]

Thus, the Plaintiff's assignments of error regarding the ALJ's determination of the Plaintiff's RFC in this case are without merit.

### B. Opinion Evidence Consideration

The Plaintiff argues that the ALJ failed to state the weight given to the opinions of the treating clinicians at Family Mental Health, PA [T. 313-358], the evaluation by Kimberly L. Beavers, M.D. of Asheville Gastroenterology regarding the Plaintiff's hepatitis C and cirrhosis of the liver [T. 363], and the evaluating opinions of the treating clinicians at Appalachian Community Services[6] [T. 418-431]. [Doc. 11 at 11].

An ALJ must evaluate every medical opinion received in the record, regardless of its source. 20 C.F.R. § 404.1527(c). A "medical opinion" is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the

---

[5] Dr. Zeisz and Ms. Howell had opined that the Plaintiff would have "at least mild challenges in remembering vital information and following directions in an employment setting" and that the Plaintiff "would have some difficulty interacting appropriately with coworkers and supervisors in employment settings" due to a low tolerance for frustration. [T. 409-13].

[6] The Plaintiff's counsel refers to Appalachian Counseling Services in his brief supporting his motion for summary judgment [Doc. 11 at 11], but the record evidence indicates that such entity is actually Appalachian Community Services [T. 418-31].

13

claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). In evaluating the weight of a medical source, the ALJ must consider certain factors including: the examining relationship, the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the medical source, the consistency of the medical source, the specialization of the provider, and any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1-6).

An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Thus, an opinion of a treating physician is not entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record. Id.; see also Rogers v. Barnhart, 204 F.Supp.2d 885, 893 (W.D.N.C. 2002) ("Even the opinion of a treating physician may be disregarded where it is inconsistent with clearly established, contemporaneous medical records").

14

The ALJ noted the Plaintiff's treatment at Family Mental Health, PA in his decision, discussing the counselor's impact on the Plaintiff which "helped her work through issues and learn how to manage her emotions." [T. 25]. The ALJ noted the Plaintiff's statements to her counselor at Family Mental Health, PA which were inconsistent with the Plaintiff's hearing testimony regarding her reading habits and her travel to her daughter's house. [T. 29, 30, 32]. Although the ALJ failed to clearly evaluate the weight of the Plaintiff's Family Mental Health, PA records, he deemed them to be reliable by indicating the inconsistencies between them and the Plaintiff's testimony. [Id.]. The Plaintiff's Family Mental Health, PA records do not contain diagnoses or findings of functional limitations of the Plaintiff, but rather serve as records of treatment and subjective symptoms that the Plaintiff experienced. [T. 313-358]. The Plaintiff's counsel has failed to note any particular evidence from within the Family Mental Health, PA records that would potentially change the outcome of this case.

Further, the ALJ referenced the Plaintiff's treatment at Asheville Gastroenterology in his decision. [T. 25, 31]. The ALJ explained the Plaintiff's improvement and stability for her hepatitis C and cirrhosis conditions. [Id.]. The ALJ traced the Asheville Gastroenterology records through 2007-2010, making mention of the Plaintiff's improvement and

stability as evidenced by such records. [T. 31].[7] The Plaintiff's counsel has failed to note any particular evidence from within the Plaintiff's Asheville Gastroenterology records that the ALJ failed to consider in his assessment. Thus, while the ALJ failed to clearly identify the weight that he attributed to the Plaintiff's Asheville Gastroenterology records according to 20 C.F.R. § 404.1527(c)(1-6), any such error was harmless in light of the ALJ's findings which indicate that he definitely relied upon the Asheville Gastroenterology records in making his decision. [T. 25, 31].

The ALJ also noted the Plaintiff's treatment from Appalachian Community Services in his decision. [T. 25]. Specifically, he referenced particular treatment notes and pointed out the inconsistencies between the Plaintiff's testimony and the Appalachian Community Services records

---

[7] The ALJ noted that Asheville Gastroenterology's records from 2007 demonstrated the following:

> [T]he claimant's condition improved with treatment throughout the year. She still complained of muscle weakness but those complaints gradually decreased. By late 2007/early 2008, the claimant reported she was feeling well and labs suggested that her liver disease was well compensated. (Exhibit 18F). She continues to follow up with Asheville Gastroenterology and, at an appointment in April 2010, her doctor noted the claimant had been well overall and had needed no significant interval care since her last appointment in September 2009. She stated that the claimant appeared healthier than at any prior evaluation and noted her symptoms were well controlled with medication. She told the claimant to simply continue following up for screenings every six months. (Exhibit B3F).

[T. 31].

regarding her baking and riding on four wheelers. [T. 30, 31]. Further, in his determination of the Plaintiff's RFC, the ALJ referenced the Appalachian Community Services notes indicating the Plaintiff's normal thought content and focused attention/concentration. [T. 32]. The Plaintiff asserts that the ALJ should have evaluated her report from Appalachian Community Services on July 8, 2011 regarding her "experiencing high levels of anxiety and depression." [Doc. 11 at 11]; [T. 431]. The Plaintiff failed to note, however, that this July 8, 2011 record explained that she "ha[d] experienced symptoms of depression for about 6 weeks" and that her son had gone to prison about 6 weeks before, thus suggesting the possible transitory nature of her symptoms. [T. 431]. The Plaintiff's counsel has failed to note any particular evidence from within the Appalachian Community Services records that would have yielded a different outcome if it had been more clearly evaluated by the ALJ. Thus, any error committed by the ALJ in failing to identify the weight that he attributed to such records was harmless due to the presence of substantial evidence in the record to support his findings regarding the Plaintiff's mental health.

In sum, the ALJ mentioned the findings from numerous sources in the record regarding the Plaintiff's condition, but he only clearly stated the

17

weight given to the medical evidence of state consultative examiner Dr. Burgess, state disability examiner A.K. Goel, M.D., state disability examiner Banu Krishnamurthy, M.D., state disability examiner E. Woods, M.S., M.D., state disability examiner Nancy Lloyd, Ph.D., state consultative examiner Walter Jim Miller, Ph.D., state consultative examiner Jerelene Howell, M.S., and state consultative examiner Jennifer Zeisz, Ph.D. [T. 32-33]. Such error by the ALJ was harmless, however, due to the substantial evidence in the record upon which the ALJ based his decision in this case.

Thus, the Plaintiff's assignments of error regarding the ALJ's assessment of the medical opinion evidence in this case are without merit.

### C. GAF Score Consideration

Finally, the Plaintiff challenges the ALJ's decision based on his failure to explain how he evaluated low GAF scores in the evidence, particularly Dr. W. Miller's note of a GAF of 52, and Appalachian Community Services's notes of a GAF of 35 on July 8, 2011 [T. 424] and a GAF of 50 on August 31, 2011 [T. 428]. [Doc. 11 at 11].

"A GAF score is intended to be used in treatment decisions and may have little to no bearing on a plaintiff's occupational functioning." Love v. Astrue, No. 3:11CV14-FDW-DSC, 2011 WL 4899989, at *4 (W.D.N.C. Sept. 6, 2011) (citing Kornecky v. Commissioner of SSA, 167 F. App'x 496,

511 (6th Cir. 2006); Lopez v. Barnhart, 78 F. App'x 675, 678 (10th Cir. 2003); Wilkins v. Barnhart, 69 F. App'x 775, 780 (7th Cir. 2003)). Further, "[a] GAF score, standing alone, is not evidence of an impairment that seriously interferes with Plaintiff's ability to work." Id. at *4 (citing Lopez, 78 F. App'x at 678; Ward v. Astrue, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D.Fla. May 8, 2008)). Additionally, the Commissioner "has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs.'" Id., at *4 (citing Wind v. Barnhart, 133 F. App'x 684, 692, n. 5 (11th Cir. June 2, 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). Finally, an ALJ "is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed into the Administrative Record," McDaniel v. Astrue, No. 1:09cv109, 2010 WL 3211050, at *6 (W.D.N.C. July 22, 2010) (quoting Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991)), and "is not required to discuss every finding in every medical report." Pike v. Astrue, No. 1:09CV448, 2011 WL 9300, at *5 (M.D.N.C. Jan. 3, 2011) (citing Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993)).

For the aforementioned reasons, the ALJ was not required to specifically discuss the Plaintiff's GAF scores from the evidence of record in this case. The ALJ discussed the treatment notes which contained the

19

GAF scores at issue. [T. 25]. Thus, the Plaintiff's assignment of error regarding the ALJ's failure to explain his evaluation of the Plaintiff's GAF scores is without merit.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability from the date of onset through the date late insured.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 12] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**. This case is hereby **DISMISSED WITH PREJUDICE**.

A judgment shall be entered contemporaneously herewith.

**IT IS SO ORDERED.**

Signed: May 12, 2014

Martin Reidinger
United States District Judge